IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RÜMEYSA ÖZTÜRK,
*Plaintiff,*

*v.*

PATRICIA HYDE, et al.,
*Defendants.*

No. 1:25-cv-12334-DJC

Oral argument requested[1]

## Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunctive Relief

### Introduction

On March 25, 2025, federal officers surrounded and grabbed Rümeysa Öztürk and took her away in an unmarked vehicle. ECF No. 42 at 1-4. Ms. Öztürk spent 45 days in immigration detention until the U.S. District Court in Vermont ordered her release after finding she had raised substantial claims that her detention was unlawful "retaliation for her op-ed in a school newspaper." ECF 140 at 17, 19-20, 27; May 9, 2025 Tr. 107:22-23. But the government's extraordinary campaign of retaliation against Ms. Öztürk extends beyond her detention. On March 25, the government also terminated Ms. Öztürk's record in Immigration and Customs Enforcement's (ICE) Student & Exchange Visa Information System (SEVIS). Nearly seven months later, ICE continues to single out Ms. Öztürk by refusing to reactivate her SEVIS record even after it restored

---

[1] Given the broad consensus of courts that have addressed the legal issues raised in this motion and granted relief to noncitizen plaintiffs whose SEVIS records were terminated, *see, e.g., Mohd v. DHS*, No. 2:25-cv-2183, 2025 WL 2112425, at *10 n.18 (E.D.N.Y. July 28, 2025) (collecting cases); *Doe #1 v. Noem*, No. 3:25-cv-00042, 2025 WL 1203472, at *5 n.1 (S.D. Iowa Apr. 24, 2025) (collecting cases and noting "overwhelming majority" of decisions granting preliminary relief), plaintiff does not request oral argument to the extent the Court is prepared to grant preliminary injunctive relief without argument.

thousands of other improperly terminated student records.[2] Unless that record is restored, Ms. Öztürk will miss out on opportunities that are a crucial to her academic and career development in her final months of graduate school. She moves for preliminary relief requiring her SEVIS record to be reactivated.

A preliminary injunction is warranted here. Consistent with the rulings of numerous courts in cases raising the same legal issues, the termination of Ms. Öztürk's SEVIS record did not comply with any permissible regulatory reason for termination of student status, and it is both contrary to law and arbitrary and capricious. *See, e.g.*, *Ortega Gonzalez v. Noem*, No. 6:25-cv-00622, 2025 WL 1355272, at \*5-6 (D. Or. May 9, 2025); *Ahmed v. Noem*, No. 25-1351, 2025 WL 2299447, at \*17-18 (D.D.C. Aug. 8, 2025); *Doe #1 v. Noem*, No. 25-cv-317, 2025 WL 1555382, at \*7 (W.D. Wis. June 2, 2025).[3] And the termination of Ms. Öztürk's SEVIS record is unlawful for the additional reason that it constitutes impermissible retaliation for her protected speech.

---

[2] *See* Kyle Cheney & Josh Gerstein, *Trump administration reverses abrupt terminations of foreign students' US visa registrations*, Politico (Apr. 25, 2025), www.politico.com/news/2025/04/25/trump-admin-reverses-termination-foreign-student-visa-registrations-00309407; *see also* Garson Decl. ¶ 13.

[3] To the knowledge of plaintiff's counsel, no court anywhere in the country has adopted the government's position that it may terminate the SEVIS record of a student who has maintained status for a reason not enumerated in applicable regulations. Counsel is aware of decisions that denied temporary restraining orders or preliminary injunctions only for non-merits reasons, such as an insufficient showing of irreparable harm. *See Doe #1*, 2025 WL 1203472, at \*5 n.1 (collecting more than 20 cases granting preliminary injunctive relief and three cases denying such relief for non-merits reasons). Counsel is also unaware of any decisions addressing the merits of a SEVIS revocation in the District of Massachusetts. *See, e.g.*, Stipulated Order (ECF No. 29) *Zheng v. Lyons*, No. 1:25-cv-10893-FDS (D. Mass. May 12, 2025) (resolving claim by agreement); Stipulated Order (ECF No. 24), *Yuan v. Lyons*, No. 1:25-cv-10906-BEM (D. Mass. July 15, 2025) (resolving claim by agreement subsequent to TRO preventing detention of student whose SEVIS record had been terminated).

In addition to a likelihood of success on the merits of her claims, the equities weigh heavily in Ms. Öztürk's favor. At her bail hearing, the District of Vermont observed that Ms. Öztürk is "totally committed to her academic career." May 9, 2025 Tr. 111:13-14. The government's unlawful termination of Ms. Öztürk's SEVIS record has prevented her full reintegration into academic life at Tufts following her release, including by prohibiting her participation in a research assistantship opportunity in her field of study. Öztürk Decl. ¶¶ 3, 7; Johnson Decl. ¶¶ 2, 6, 10. While reactivation of her SEVIS record is essential to ensure that Ms. Öztürk is not further deprived of vital educational opportunities in the final months of her doctoral program, it will not interfere with the removal proceedings against her or with any legitimate government or public interest. Ms. Öztürk is accordingly entitled to preliminary injunctive relief requiring reactivation of her SEVIS record, and restoration of that record *nunc pro tunc* from the termination date to eliminate any erroneous gaps in the SEVIS record.

## Background

## I.    Rules governing F-1 students and SEVIS termination.

SEVIS is a database administered by ICE's Student and Exchange Visitor Program (SEVP) and used to track foreign students, including those in F-1 student status like Ms. Öztürk. *See* 8 U.S.C. § 1372(a)(1); 8 C.F.R. § 214.3(g); *see also* 9 FAM 402.5-4(A) (SEVIS "is designed to monitor the academic progress, movement, etc. of foreign students and exchange visitors from entry into the United States to departure"). The termination of a student's SEVIS record prevents the student from being employed and has significant consequences for their ability to engage fully in academic life. French Decl. ¶¶ 18-19. It is permissible only for limited and expressly articulated

reasons, including the student's failure to maintain status. *See Parra Rodriguez v. Noem*, No. 3:25-cv-616, 2025 WL 1284722, at *4-5 (D. Conn. May 1, 2025).

### A.    The F-1 visa process and SEVIS record.

U.S. immigration law authorizes granting F-1 visas to noncitizens to come to the United States temporarily to "pursue a full course of study" at a government-approved U.S. educational institution. *See* 8 U.S.C. § 1101(a)(15)(F)(i); *see also* 8 C.F.R. § 214.1(a)(2). A foreign student who wishes to study in the United States in F-1 status can obtain that status either after being admitted to the country on an F-1 visa granted by the Department of State, 9 FAM 402.5-5(B), or after applying to U.S. Citizenship and Immigration Services (USCIS) to change their status from another temporary status in the United States to F-1 status. *See* 8 C.F.R. § 248.1(c); *see also id.* § 214.2(b)(7).

In either scenario, the intending student must first be accepted by a SEVP-approved school. *See* 8 U.S.C. § 1372; 8 C.F.R. § 214.2(f)(1); 9 FAM 402.5-5(C).[4] The school must create a record for the intending student in the SEVIS system and complete an I-20 form within that system providing information about the student and the academic program they will pursue. *See* 8 C.F.R. § 214.2(f)(1)(iii); 9 FAM 402.5-5(D); ICE Student Steps Site, *supra* n.4.[5] An intending student who is outside the United

---

[4] *See generally* ICE, *Student Process Steps: How to Navigate the U.S. Immigration System* (last visited Oct. 10, 2025), https://ice.gov/sevis/students (ICE Student Steps Site); Department of State, *Student Visa* (last visited Oct. 10, 2025), https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html; USCIS, *Changing to a Nonimmigrant F or M Student Status* (last visited Oct. 10, 2025), https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment/changing-to-a-nonimmigrant-f-or-m-student-status (USCIS Changing Status Site).

[5] *See also* Department of Homeland Security (DHS), Study in the States, *Create Initial COE (Form I-20)* (last visited Oct. 10, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/certificates-of-eligibility/create-initial-coe-form-i-20.

States prior to beginning their course of studies must—after being accepted into an SEVP-approved school, having the school complete the I-20, and paying a SEVIS fee—apply for an F-1 visa at a U.S. embassy or consulate. *See* 8 C.F.R. §§ 214.2(f)(1), (f)(19), 214.13; 9 FAM 402.5-5(B)-(D); ICE Student Steps Site, *supra* n.4.  If granted a visa, the intending student must travel to the United States within 30 days of the start of their educational program. *See* 8 C.F.R. § 214.2(f)(5). If admitted by a U.S. immigration officer at a port of entry, the student is then in F-1 status. *See id*.[6]

Both students and approved educational institutions are regulated as part of the SEVP system. The educational institution, for example, must agree to provide the address and other information about the student, as well as to report to the U.S. government if an F-1 student stops attending the institution. *See* 8 U.S.C. §§ 1101(a)(15)(F)(i), 1372; 8 C.F.R. § 214.3(g). Each SEVP-approved school has a Designated School Official (DSO) who monitors and advises F-1 students. *See* 8 C.F.R. §§ 214.2(f), 214.3(l); Garson Decl. ¶ 1.

International students are also "subject to an array of regulations." *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175 (3d Cir. 2019) (citing 8 C.F.R. § 214.2(f)). For example, F-1 students must maintain a "full course of study" and comply with restrictions on employment. *See* 8 C.F.R. §§ 214.2(f)(5), (f)(6), (f)(9); *Parra Rodriguez,* 2025 WL 1284722, at *2; *Ahmed*, 2025 WL 2299447, at *2-3. SEVIS is used

---

[6] If the intending student is already in the United States in another temporary status, then after being accepted into a SEVP-approved school, having the school complete the I-20, and paying the SEVIS fee, the student may apply to USCIS to change to F-1 status. *See* 8 C.F.R. § 248.1(c); *see also* 8 C.F.R. § 214.2(b)(7); USCIS Changing Status Site, *supra* n.4. If that student is approved for F-1 status by USCIS, but at some point travels abroad during their studies, they will need to apply for an F-1 visa at a U.S. embassy or consulate in order to re-enter the United States and continue their studies. French Decl. ¶ 11.

to monitor and report whether international students are complying with the requirement to maintain a "full course of study" at an approved institution. 8 C.F.R. § 214.3(g). A student who is not attending their school will have that fact reported to ICE by their school's DSO, *see* 8 U.S.C. § 1372(a)(4), (c)(1)(C); 8 C.F.R. § 214.3(g), who will terminate the student's record in SEVIS.[7]

### B. Authorized bases for SEVIS record termination.

A SEVIS record may be terminated when a student fails to maintain or loses their F-1 status. By regulation, this occurs in only two circumstances. *See Saxena v. Noem*, No. 5:25-CV-05035, 2025 WL 1413266, at *7 (D.S.D. May 15, 2025); *Parra Rodriguez*, 2025 WL 1284722, at *4-5; *Doe No. 1 v. Noem*, No. 25-1962, 2025 WL 1224783, at *2 (E.D. Pa. Apr. 28, 2025); *Ahmed*, 2025 WL 2299447, at *3 & n.5.

First, F-1 students fail to maintain their status when they do not comply with the terms of that status. Maintaining F-1 status requires "pursu[ing] a full course of study" at an approved institution. 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f)(5)(i), (f)(6). Like other visa holders, students in F-1 status must also abide by the terms of their status by not engaging in unauthorized work, not giving false information to the Department of Homeland Security, and not being convicted of certain crimes. *See* 8 C.F.R. §§ 214.1(e)-(g). An F-1 student may remain in the United States for as long as they continue to meet the requirements of their visa. *See* 8 C.F.R. § 214.2(f)(5); *Saxena*, 2025 WL 1413266, at *1; *Du v. U.S. DHS*, No. 3:25-cv-644, 2025 WL 1549098, at *1-2 (D. Conn. May 31, 2025). Termination of a SEVIS record based on a failure to maintain

---

[7] DHS Study in the United States, *SEVIS Help Hub: Terminate a Student* (last visited Oct. 10, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (DHS SEVIS Termination Site).

F-1 status is generally done by a school's DSO, not by ICE. *See* French Decl. ¶ 9; *see also* DHS SEVIS Termination Site.

Second, ICE may terminate a student's status in specific limited circumstances. This may occur (1) if a specific waiver of inadmissibility was granted but later revoked; (2) if a private bill is introduced that would confer permanent resident status on the noncitizen; or (3) if a notice is issued in the Federal Register revoking the status due to "national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185 n.100; *Doe No. 1*, 2025 WL 1224783, at *2, *5.

Termination of student status is distinct from the revocation of a visa. A visa is a document that is used to travel to the United States and seek admission to the country at a port of entry, but it does not determine whether someone remains in valid status once they enter the United States. *See Sultan v. Trump*, No. 25-cv-1121, 2025 WL 1207071, at *2 (D.D.C. Apr. 24, 2025) ("An F-1 visa controls a noncitizen student's entry into the United Sates, not their lawful status while in the country."); French Decl. ¶ 11. For example, an F-1 student's visa may expire or be terminated without any impact on their student status as reflected in SEVIS. Indeed, in 2010, ICE issued policy guidance acknowledging that a "[v]isa revocation is *not*, in itself, a cause for termination of the student's SEVIS record."[8]

---

[8] ICE Policy Guidance 1004-04 – Visa Revocations 3 (June 7, 2010), https://www.acluva.org/app/uploads/2025/03/ECF-79-5-Exh.-D-ICE-Guidance.pdf (ICE 2010 Policy Guidance) (emphasis added).

## II.    The March 25, 2025 termination of Ms. Öztürk's SEVIS record.

Ms. Öztürk began her Ph.D. at Tufts University in February 2021. Garson Decl. Ex. 1. Her SEVIS record became "ACTIVE" on the day that she began her program, and it reflects that she continued to maintain her student status until March 25, 2025. *Id.*

At 7:32 p.m. on March 25, 2025—two hours after ICE arrested Ms. Öztürk—a user listed as "DHS Official" terminated her SEVIS record. Garson Decl. ¶ 3 & Exs. 1-2. Ms. Öztürk's SEVIS record reflects that after this "Change of Student Status," the "Resulting Status" was listed as "TERMINATED." *Id.* Ex. 1. The termination reason was stated as "OTHERWISE FAILING TO MAINTAIN STATUS" and the explanation states that the action happened "Pursuant to Section 221(i) of the Immigration and Nationality Act, 8 U.S.C. 1201(i)"—a reference to a provision of immigration law regarding visa revocation, not student status. Garson Decl. ¶¶ 3-5 & Exs. 1-2.

The following day, ICE made further changes to Ms. Öztürk's SEVIS record and also sent correspondence to Ms. Öztürk and Tufts regarding the termination of her SEVIS record. Specifically, at 9:18 a.m. and/or 9:19am on March 26, a "DHS Official" altered the reason for the termination to "OTHERWISE FAILING TO MAINTAIN STATUS," this time omitting any further explanation. *Id.* ¶ 8 & Exs. 1, 3. At 10:31am that morning, the SEVP program at ICE sent an email to Tufts University and to Ms. Öztürk, who was at that moment detained incommunicado en route to Louisiana. *See* ECF No. 42 at 5; Garson Decl. ¶ 11. The email contained an attached "Termination Notice," addressed to Ms. Öztürk, which stated that her SEVIS designation was "Terminated pursuant to 237(a)(1)(C)(i) and/or 237(a)(4)(C)(i) of the Immigration and Nationality Act." *Id.* & Ex. 5. The former provision, which corresponds to 8 U.S.C. § 1227(a)(1)(C)(i), renders deportable a noncitizen who "has failed to maintain the nonimmigrant status in

8

which the alien was admitted," whereas the latter, which corresponds to 8 U.S.C.

§ 1227(a)(4)(C)(i), renders deportable a noncitizen "whose presence or activities in the

United States the Secretary of State has reasonable ground to believe would have

potentially serious adverse foreign policy consequences for the United States."

On April 8, Ms. Öztürk's SEVIS record was again updated to reflect a third, new

reason for termination. Garson Decl. ¶ 9 & Exs. 1, 4. Since that day, the reason for

termination has been listed as "Other-Individual identified in criminal records check

and/or has had their visa revoked. SEVIS record has been terminated." *Id.* ¶ 12 & Ex. 1.[9]

Ms. Öztürk's SEVIS record continues to be listed as "TERMINATED." *Id.* Ex. 1.

Following a May 15 status conference in this case, counsel for the government confirmed

that ICE would not voluntarily reactivate Ms. Öztürk's SEVIS record. *See* May 15, 2025

Tr. 24:21-25:5. Following this case's transfer back to the District of Massachusetts,

subsequent efforts to seek the government's voluntary reactivation of the SEVIS record

were unsuccessful. ECF No. 169.

## Argument

Ms. Öztürk is entitled to a preliminary injunction because (1) she "is likely to

succeed on the merits" of her claim that ICE unlawfully terminated her SEVIS record,

(2) she is "likely to suffer irreparable harm in the absence of preliminary relief," and (3)

"the balance of equities tips in [her] favor, and . . . an injunction is in the public

interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[10]

---

[9] It appears that on or around April 8, ICE began broadly using this termination reason.
*See Liu v. Noem*, No. 25-cv-133, 780 F. Supp. 3d 386, 395-98(describing an April 8
change in the termination reason matching the change made in this case); Garson Decl.
¶ 10.
[10] Ms. Öztürk requests a prohibitory preliminary injunction, not a mandatory injunction,
because she asks this Court to "maintain[] the status quo" by restoring her SEVIS record

I.     **Ms. Öztürk is likely to succeed on the merits of her claim that ICE unlawfully terminated her SEVIS record.**

Ms. Öztürk is likely to succeed on the merits of her claims under the Administrative Procedure Act ("APA") and the First Amendment.

A.     **The termination of Ms. Öztürk's SEVIS record violates the APA because it is both not in accordance with law and arbitrary and capricious.**

The termination of Ms. Öztürk's SEVIS record is a final agency action reviewable under the APA. *See* 5 U.S.C. § 704; *Jie Fang*, 935 F.3d at 182-83.[11] And Ms. Öztürk is likely to succeed on the merits of her claim that the termination is both not in accordance with law and arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

*First*, the termination of Ms. Öztürk's SEVIS record was not in accordance with law because there were no permitted regulatory reasons for terminating her SEVIS record. *See Doe*, 784 F. Supp. 3d. at 1312; *Doe No. 1*, 2025 WL 1224783, at *5. The three specific scenarios in which ICE may terminate an F-1 visa holder's status—the revocation of a waiver, the introduction of a private bill, or pursuant to a Federal Register notification—are not present here. *See* 8 C.F.R. § 214.1(d). Ms. Öztürk did not need and thus did not receive any waiver of inadmissibility to obtain a visa or gain admission to the United States; she is not the subject of any private bill; and DHS has not published a Federal Register notice. Öztürk Decl. ¶ 13.

---

to "the last peaceable uncontested status preceding the present controversy." *Parra Rodriguez*, 2025 WL 1284722, at *11 (quoting *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 105 (2d Cir. 2024)); *see also Doe v. Trump*, 784 F. Supp. 3d 1297, 1307 (N.D. Cal. 2025); *Mohd*, 2025 WL 2112425, at *7-8; *accord Braintree Lab'ys, Inc. v. Citigroup Global Markets Inc.*, 622 F.3d 36, 41 & n.5 (1st Cir. 2010).

[11] *See also, e.g.*, *Parra Rodriguez*, 2025 WL 1284722, at *7 (holding termination of a SEVIS record is reviewable final agency action); *Doe v. Noem*, No. 3:25-cv-00023, 2025 WL 1161386, at *6 n.5 (W.D. Va. Apr. 21, 2025) (same); *Doe v. Noem*, 778 F. Supp. 3d 1151, 1159-60 (W.D. Wash. 2025) (same); *Ahmed*, 2025 WL 2299447, at *16.

In addition to these three specific scenarios, the only other permissible basis under the regulations for the termination of Ms. Öztürk's SEVIS record would be a failure to maintain a course of study or otherwise fail to maintain her status. *See Parra Rodriguez*, 2025 WL 1284722, at *4-5; *Doe No. 1*, 2025 WL 1224783, at *5. But the records make clear that Ms. Öztürk was maintaining her status and continuing her course of study. *See* Garson Decl. ¶ 3; *id.* Ex. 1. Nothing changed that could explain the termination of her SEVIS record on March 25 other than the government's decision to target and punish her for her speech.

ICE has at times cited the Department of State's revocation of Ms. Öztürk's visa as a basis in SEVIS for its termination of her record—although notably, not in its March 26 communication purporting to notify Ms. Öztürk of the termination. *See* Garson Decl. Exs. 2-5. But the revocation of a visa is not a basis for terminating a SEVIS record. *See* 8 C.F.R. § 214.1(d); ICE 2010 Policy Guidance.[12] Instead, § 214.1(d) provides the three specific reasons that a person who has maintained their status may have that status terminated. These reasons include the revocation of a discretionary *waiver* that some noncitizens may need in order to obtain a visa, *see* 8 U.S.C. § 1182(d), but they do *not* include the revocation of that visa itself*, see* 8 C.F.R. § 214.1(d). As numerous courts have found, ICE may not terminate SEVIS records unless a student has failed to

---

[12] On April 26,2025, in an internal Broadcast Message that the government has submitted in some cases, ICE listed visa revocation as among the permissible bases for the termination of a SEVIS record. *See, e.g.*, *Doe v. Noem*, No. 2:25-CV-00633, 2025 WL 1397007, at *2 (W.D. Wash. May 14, 2025); French Decl. ¶ 16. But this document did not purport to overturn ICE's published guidance, *see* French Decl. ¶ 16, and, in any event, it is inconsistent with § 214.1(d) to the extent it purports to create authority to terminate SEVIS records on the basis of a visa revocation. *See Doe*, 2025 WL 1397007, at *2 (the Broadcast Message "makes legal and factual claims that this Court and others have rejected").

maintain their status or a § 214.1(d) ground is present. *Parra Rodriguez*, 2025 WL 1284722, at *8 (collecting cases). Neither basis is present here.

    *Second*, the termination of Ms. Öztürk's SEVIS record was also arbitrary and capricious. Agency action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). That test is amply satisfied here. ICE has offered a shifting set of explanations for why Ms. Öztürk's SEVIS record was terminated, Garson Decl. ¶¶ 6-11 & Exs. 1-5, none of which are valid or supported by the facts. ICE's explanations for terminating Ms. Öztürk's SEVIS record variously assert irrelevant and/or incorrect facts,[13] inapposite legal authorities,[14] and unsupported conclusions while ignoring Ms. Öztürk's maintenance of her status.[15] In addition, ICE failed to consider Ms. Öztürk's and Tufts University's reliance interests and acted out of impermissible retaliatory motives. The termination of Ms. Öztürk's SEVIS record is thus arbitrary and capricious. *See Doe No. 1*, 2025 WL 1224783, at *5.

---

[13] *See* Garson Decl. Ex. 4 (citing "Individual identified in criminal records check and/or has had their VISA revoked" even though Ms. Öztürk has no criminal record and a visa revocation does not terminate student status).

[14] *See* Garson Decl. Ex. 2 (citing 8 U.S.C. § 1201(i), a visa revocation provision, to assert that Ms. Öztürk was "OTHERWISE FAILING TO MAINTAIN STATUS" even though visa revocation does not terminate student status), Ex. 5 (citing deportability grounds for failure to maintain status and for potentially serious adverse foreign policy consequences even though neither ground applies to, or even has been invoked against, Ms. Öztürk).

[15] *See* Garson Decl. Exs. 2, 3 (asserting incorrectly that Ms. Öztürk failed to maintain status).

### B.    The termination of Ms. Öztürk's SEVIS record was retaliation for her protected speech, in violation of the First Amendment.

Ms. Öztürk is also likely to succeed on the merits of her First Amendment challenge to the termination of her SEVIS record. That First Amendment retaliation claim requires Ms. Öztürk to show (1) that her speech was constitutionally protected by the First Amendment and (2) that there was a causal connection between her speech and the government's retaliatory conduct. *See Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141 (1st Cir. 2016); *see also Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 (9th Cir. 2021). "Causation is established by showing that the plaintiff's conduct was a 'substantial' or 'motivating' factor in bringing about the allegedly retaliatory action." *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The District of Vermont has already held that Ms. Öztürk raised a substantial claim that her *detention* was unlawfully retaliatory due to the unrebutted evidence that it was motivated by nothing other than her co-authorship of a 2024 student op-ed concerning the Tufts University's response to the student government's resolutions regarding Israel's war in Gaza. For similar reasons, she is likely to succeed on the merits of her claim that the *termination of her SEVIS record* is unlawfully retaliatory as well.

First, there is no doubt that Ms. Öztürk's speech is protected by the First Amendment, which protects noncitizens as well as citizens. *See Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("Freedom of speech and of press is accorded aliens residing in this country."). The speech at issue in this case—an op-ed on a subject of public concern— occupies "the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (*quoting Connick v.*

*Myers*, 461 U.S. 138, 145 (1983)); *see also Ragbir v. Homan*, 923 F.3d 53, 70 (2d Cir.

2019) (cleaned up) (quoting *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011)), *cert.*

*granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S.

Ct. 227 (2020)); *Am. Assoc. of Univ. Professors v. Rubio* [AAUP], --- F. Supp. 3d ----,

No. 25-cv-10685, 2025 WL 2777659, at *45 (D. Mass. Sept. 30, 2025) ("[N]oncitizens

have at least the core First Amendment right to political speech without reprisal.").

Second, in nearly seven months of litigation, the government has not disputed the

clear causal connection between Ms. Öztürk's speech and its retaliatory conduct. The

District of Vermont thus acknowledged the strength of the evidence that retaliatory

motivations for protected speech drove the government's actions against Ms. Öztürk,

stating with regard to her detention that:

> The record before this Court shows that the only speech at issue is Ms.
> Ozturk's op-ed, and her arrest and detention clearly constitute adverse
> action. On April 18, the Court offered the government the opportunity to
> rebut Ms. Ozturk's evidence showing that her op-ed is the but-for cause of
> her detention. ECF No. 104 at 56-58. The government has not done so.
> Meanwhile, Ms. Ozturk has introduced significant evidence demonstrating
> the irregular nature of the government's actions. ECF No. 122 at 8. The
> Court therefore concluded that Ms. Ozturk has presented, at the very least,
> a substantial claim of a First Amendment violation.

*See* ECF 140 at 17. Another session of the District of Massachusetts, examining

documentary evidence and testimony from government witnesses relating to Ms.

Öztürk's detention in the context of a policy challenge, has similarly remarked that

"there is no evidence that Öztürk did anything but co-author an op-ed" and held that her

targeting was part of a policy of unlawfully discriminating against speech in support of

Palestine, in violation of the First Amendment. *See AAUP*, 2025 WL 2777659, at *25-27,

48-50. Ms. Öztürk is thus likely to prevail on her First Amendment claim.

## II.    Ms. Öztürk is likely to suffer irreparable harm if her SEVIS record is not restored.

Ms. Öztürk has already faced irreparable harm due to the ongoing failure to

reactivate her SEVIS record, and further irreparable harm will result if that record is not

promptly restored. Ms. Öztürk cannot work without her SEVIS record being restored.

French Decl. ¶ 19; *see also Doe 1 v. Bondi*, 785 F. Supp. 3d 1268, 1285 (N.D. Ga. 2025)

(noting DHS guidance stating that students whose SEVIS records are terminated lose all

employment authorization). And if her SEVIS record is not reactivated soon, she will

lose the last opportunity she has in these final months of her graduate studies to obtain

relevant work experience outside of her coursework and thesis, in particular, the

opportunity to work on a specific paid research assistantship to study children's

engagement with a podcast. Öztürk Decl. ¶¶ 3-10; Johnson Decl. ¶¶ 2-4, 6, 9-11.

Numerous courts have held that the inability to engage in employment consistent

with F-1 status constitutes an irreparable harm. *See Doe 4 v. Lyons*, 783 F. Supp. 3d

1281, 1296-97 (W.D. Wash. 2025); *Roe v. Noem*, No. 25-40, 2025 WL 1382930, at *9 (D.

Mont. May 13, 2025); *Du*, 2025 WL 1549098, at *7. Courts have also acknowledged that

on-campus work experiences are not only important for their financial value, but also as

"an integral part of . . . doctoral training." *See Oruganti v. Noem*, 2:25-cv-00409, 2025

WL 1144560, at *4 (S.D. Ohio Apr. 18, 2025); *see also Doe #1*, 2025 WL 1555382, at *10

(finding "the loss of [Plaintiff's] stipend and her inability to work as a project assistant

also amounts to irreparable harm"); *Doe 4*, 783 F. Supp. 3d at 1296 (concluding that

"interruption of educational programs or progress can constitute irreparable harm").

Harms similar to those that have supported preliminary injunctive relief in other

cases are present here as well. As the Vermont District Court noted, Ms. Öztürk is fully

committed to and immersed in her academic life at Tufts University. May 9, 2025 Tr. 111:13-112:12. She values the opportunity for research assistantships both as a source of income and as a vital aspect of her doctoral training. *See* Öztürk Decl. ¶¶ 4, 6-10; *see also Oruganti*, 2025 WL 1144560, at *4. Her doctoral studies have already suffered significant interruption due to her unlawful detention and the nearly five months (and counting) that she has been on campus without an active SEVIS record. *See* Öztürk Decl. ¶¶ 10-12. With mere months remaining in her doctoral studies, absent a preliminary injunction Ms. Öztürk will continue to be impeded in her ability to gain the work and research experiences that are integral to her graduate studies—a "significant disruption" to her academic life. French Decl. ¶ 19; Öztürk Decl. ¶¶ 3, 10-12.[16]

Because of her inactive SEVIS record, Ms. Öztürk is now missing out on a specific research opportunity that would be particularly meaningful to her academic and career development. Öztürk Decl. ¶¶ 5-10. The opportunity involves subject matter that is at the heart of Ms. Öztürk's studies and would provide her with a unique opportunity to grow in her knowledge and skills, while making contributions that advance her career and her field. *Id.* ¶¶ 6-7. Indeed, at Ms. Öztürk's bail hearing, her advisor Sara Johnson testified about this particular research opportunity, explaining that Ms. Öztürk "[is] our media expert on that project" and that her expertise is "absolutely critical." May 9, 2025 Tr. 73:1-11. When asked about the consequences of Ms. Öztürk being unable to participate, Dr. Johnson testified that her "expertise is really difficult to replicate" and that the project would suffer for her absence. *Id.* 74:3-11; Johnson Decl. ¶¶ 3, 11. Unless

---

[16] Ms. Öztürk has also lost out on teaching opportunities. At the May 9, 2025 hearing, the Court heard testimony that Ms. Öztürk had been scheduled to teach a summer course. See May 9, 2025 Tr. 39:9-12, 72:20-25. Following her detention and the termination of her SEVIS record, these plans had to change. Öztürk Decl. ¶ 11.

Ms. Öztürk's SEVIS record is restored, she will lose an important opportunity to contribute to this project and develop in her scholarship and her career, a significant detriment to her graduate experience. Öztürk Decl. ¶¶ 6-10; Johnson Decl. ¶¶ 6, 11.

Apart from lost work opportunities, SEVIS termination also creates ongoing immigration consequences. SEVIS termination "triggers a negative impact even if the student did not engage in any activity that required termination and was not in violation of status" because "SEVIS is the sole location where comprehensive student status information is kept," and the "SEVIS record is assumed to accurately reflect whether a student maintains status." French Decl. ¶ 18. The failure to restore Ms. Öztürk's record and to cure erroneous gaps in that record adds uncertainty to her present situation and will impact her prospects for any future immigration benefits in the United States. *Id.* ¶ 20; *see also Doe v. Noem*, 778 F. Supp. 3d at 1165-66 (noting government "could not confirm or deny if they consider Plaintiff to currently be out of status" and finding irreparable harm in the face of uncertainty and concern that Plaintiff "may . . . be accruing unlawful presence as a result of the SEVIS revocation").[17]

---

[17] *See also Doe*, 784 F. Supp. 3d at 1310-11 (finding gap and uncertainty in historical record created an irreparable harm even where, unlike in Ms. Öztürk's case, the record had been reactivated); *Parra Rodriguez*, 2025 WL 1284722, at *10 (finding even after reactivation of SEVIS record that 17-day gap was irreparable harm warranting preliminary injunctive relief); *Du*, 2025 WL 1549098, at *7 (noting that a terminated SEVIS record indicates non-compliance with the terms of the student's non-immigrant status, finding irreparable harm, and finding that "the distinction Defendants draw between record termination and status termination is not meaningful in this context"); *Doe 1*, 785 F. Supp. 3d at 1286 n.11 (noting "[t]hough it may not be the policy of Defendants at this moment to consider a nonimmigrant with a terminated SEVIS record unlawfully present, policies change" and stating "[t]he Court cannot say with certainty that absent the restoration of the SEVIS records, the Plaintiffs would not be accruing unlawful presence"); *Doe #1 v. Noem*, 781 F. Supp. 3d 246, 265-67 (D.N.J. 2025) (finding irreparable harm where previously terminated SEVIS record may trigger scrutiny by immigration authorities or have negative impacts in adjudicating immigration benefits).

**III.    The balance of the equities weighs in Ms. Öztürk's favor, and an injunction is in the public interest.**

The final two preliminary injunction factors, which merge when the government is the opposing party, also favor preliminary injunctive relief in this case. *See Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021). While Ms. Öztürk suffers concrete harms from not having her SEVIS record restored, Öztürk Decl. ¶¶ 3-12, the government has no legitimate interest in continuing to punish her through the unlawful and retaliatory termination of that status. The public interest is harmed when Ms. Öztürk is unable to engage as a full participant in her academic community, especially where a project designed to advance our understanding of children's learning and engagement misses out on her potential contributions. *See* Johnson Decl. ¶¶ 2, 12; Öztürk Decl. ¶ 7. Moreover, "there is substantial public interest in ensuring government agencies abide by federal laws and regulations." *Parra Rodriguez*, 2025 WL 1284722, at *10 (granting preliminary injunction requiring restoration of SEVIS record as of date of termination).

The balance of the equities is clear from the record accompanying this motion. But it is also confirmed by prior rulings in Ms. Öztürk's habeas case that recognize the extent of the government's retaliatory conduct, and the harms it has produced. These factors decidedly tilt the equities in favor of granting Ms. Öztürk preliminary relief to alleviate such harms.

First, the District of Vermont has recognized the "extraordinary" nature of the government's efforts to target Ms. Öztürk for her speech. ECF 140 at 21. It held that the "nature and strength of Ms. Ozturk's constitutional claims" were among the "extraordinary circumstances" supporting her release pending adjudication of her habeas petition. *Id*. at 27. That the government's only basis for acting against Ms. Öztürk

is her protected speech further underscores the public interest in providing her timely relief from the unlawful and retaliatory termination of her SEVIS record. Indeed, another session of this Court reviewed extensive evidence of the government's efforts to target noncitizens for their protected speech, as well as the impact Ms. Öztürk's arrest and detention specifically had on noncitizen university professors' exercise of their First Amendment rights, and found that the government had engaged in a "campaign of speech-chilling retribution." *See AAUP*, 2025 WL 2777659, at *25-34, 48. The public interest demands that such retaliatory conduct be redressed as soon as possible, rather than allowing unlawful retaliation to continue pending further litigation.

Second, prior rulings in Ms. Öztürk's habeas case also recognized that the harm of allowing the government's conduct to continue unabated pending the litigation fall entirely on Ms. Öztürk. As the Second Circuit noted in denying a stay pending appeal of the District of Vermont's order to transfer Ms. Öztürk from Louisiana to Vermont for her bail hearing, "[f]aced with such a conflict between the government's unspecific financial and administrative concerns on the one hand, and the risk of substantial constitutional harm to Öztürk on the other, we have little difficulty concluding that the balance of hardships tips decidedly in her favor." *Ozturk v. Hyde*, 136 F.4th 382, 403 (2d Cir. 2025) (citation modified). Like the transfer order, an order requiring reinstating Ms. Öztürk's SEVIS record would have "no impact on the government's separate removal proceedings against her in immigration court," ECF 109 at 4, or on any legitimate government interest. Although "the executive branch assuredly has an interest in effectuating statutes enacted by the legislative branch, the judicial branch is charged with ensuring that the other branches do so in comport with the laws and the Constitution." *Id.* Here, once again, the balance of the equities and the public interest

decidedly favor granting the preliminary injunctive relief necessary to allow Ms. Öztürk's full participation in her academic career in the final year of her doctoral studies.

## Conclusion

For the foregoing reasons, this Court should grant preliminary injunctive relief that requires the government to reactivate Ms. Öztürk's SEVIS record and to restore it *nunc pro tunc* from the termination date to avoid any gaps in the record.[18]

Dated: October 17, 2025                          Respectfully submitted,

*/s/ Adriana Lafaille*
Jessie J. Rossman (BBO #670685)
Adriana Lafaille (BBO # 680210)
Rachel E. Davidson (BBO #707084)
Julian Bava (BBO #712829)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
rdavidson@aclum.org
jbava@aclum.org

Mahsa Khanbabai (BBO #639803)
115 Main Street, Suite 1B
North Easton, MA 02356
(508) 297-2065
mahsa@mk-immigration.com

Brian Hauss
Esha Bhandari
Brett Max Kaufman
Michael K. T. Tan

---

[18] Particularly given the government's shifting positions with regard to students' SEVIS records, *see, e.g.*, *Doe*, 784 F. Supp. 3d at 1309-11, Ms. Öztürk reserves the right to seek additional or different relief relating to her SEVIS record and/or student status at a future date.

Noor Zafar
Sidra Mahfooz
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
bhauss@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org
m.tan@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Matthew D. Brinckerhoff
Katherine Rosenfeld
Vasudha Talla
Sonya Levitova
EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
One Rockefeller Plaza, 8th Floor
New York, NY 10020
212-763-5000
mbrinckerhoff@ecbawm.com
krosenfeld@ecbawm.com
vtalla@ecbawm.com
slevitova@ecbawm.com

Ramzi Kassem
Naz Ahmad
Mudassar Toppa
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu

Lia N. Ernst
Monica H. Allard
Hilary Rich
ACLU Foundation of Vermont
P.O. Box 277
Montpelier, VT 05601

802-223-6304
lernst@acluvt.org
mallard@acluvt.org
hrich@acluvt.org