# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RÜMEYSA ÖZTÜRK,<br><br>*Plaintiff,*<br><br>v.<br><br>PATRICIA HYDE, Acting Director of Boston Field Office, United States Immigration and Customs Enforcement, TODD LYONS, Acting Director United States Immigration and Customs Enforcement, and KRISTI NOEM, Secretary of Homeland Security,<br><br>*Defendants.* | Civil Action No. 1:25-cv-12334-DJC |

## INTRODUCTION

Enforcing the immigration laws of the United States is the sovereign prerogative of the Executive Branch.  In executing this enforcement mission as it relates to nonimmigrant (or temporary) foreign students, Congress mandated that the U.S. Department of Homeland Security ("DHS"), through U.S. Immigration and Customs Enforcement ("ICE") and the Student Exchange Visitor Program ("SEVP"), "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to aliens seeking F-1 student status.  *See* 8 U.S.C. § 1372.   Under this authority, DHS (ICE and SEVP) established the Student Exchange Visitor Information System ("SEVIS").

In her motion for preliminary injunctive relief, Plaintiff asserts she is likely to succeed on the merits of an Administrative Procedure Act ("APA") and Constitutional claim challenging ICE's termination of her record maintained in SEVIS.  Doc. No. 172.  Plaintiff, however, cannot meet

her burden to demonstrate likelihood of success on the merits for multiple reasons. ICE terminated Plaintiff's SEVIS record because the Department of State revoked her student visa effective immediately and ICE then issued Plaintiff a Notice to Appear ("NTA") in removal proceedings as the revocation of her visa made her subject to removal from the United States. *See* U.S.C. § 1227(a)(1)(B) (stating that a nonimmigrant "whose nonimmigrant visa . . . has been revoked under section 1201(i) of this title, is deportable"). This Court lacks subject matter jurisdiction pursuant to jurisdiction stripping provisions of the Immigration and Nationality Act ("INA") over her claims challenging actions taken antecedent to and in contemplation of those removal proceedings, which includes the termination of her SEVIS record.

Additionally, the SEVIS record change was not a final agency action because it did not adjudicate or terminate Plaintiff's nonimmigrant status and therefore review under the APA is prohibited. Further, the Privacy Act further bars Plaintiff from seeking a change to her SEVIS record.

Even if Plaintiff could establish that judicial review is permissible, Plaintiff cannot demonstrate that ICE's termination of her SEVIS record was unlawful. ICE had a rational basis for termination of Petitioner's SEVIS record because her F-1 student visa had been revoked by the Department of State and she was subject to removal proceedings. For these reasons, the Court should deny Plaintiff's request for a preliminary injunction.

## STATUTORY AND REGULATORY BACKGROUND

### A.    The F-1 Nonimmigrant Student Classification.

The INA, as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary,

conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To qualify for F-1 nonimmigrant status, a foreign national is required to (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status (a "Form I-20"), issued by the school, and (3) when applicable, submit a visa application at the U.S. Embassy or Consulate abroad. *See* https://studyinthestates.dhs.gov/students/get-started/international-student-life-cycle; *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), *available at* https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2.

Once a student has received an F-1 visa from the State Department, the student may present himself or herself to a port of entry for admission to the United States. At the port of entry, the applicant must present the Form I-20, issued by a certified school in the student's name and documentary evidence of financial support; and he or she must demonstrate he or she intends to attend the school specified on the visa. 8 C.F.R. § 214.2(f)(1)(i); *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), *available at* https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2. To maintain F-1 status, at a minimum a nonimmigrant student must "pursue a full course of study" or "engage in authorized practical training." 8 C.F.R. § 214.2(f)(5)(i); (f)(6)(iii); *see also id.* §§ (f)(7)(iii) (failure to complete program on time because of academic probation or suspension); (f)(12)(ii) (failure to comply with OPT reporting requirements); (f)(9) (restrictions on employment).

Individuals admitted in F-1 status do not have a set time period for which they are admitted to the United States but instead are permitted to remain in the United States for the duration of status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the

3

time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). If a student stays beyond their authorized end date (including any grace period), they may be considered to be failing to maintain their nonimmigrant status. https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8.

An F-1 student admitted for the duration of status, who receives a decision from USCIS (through reinstatement or application for a change of status or other immigration benefit) concluding that he or she violated his or her nonimmigrant status will begin to accrue unlawful presence the day after that request is denied. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," at 25 found online at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF    (last visited Oct. 31, 2025); *see also* 8 C.F.R. § 239.3.

B.    <u>The Student and Exchange Visitor Information System (SEVIS).</u>

SEVIS is "a law enforcement system of records." 86 Fed. Reg. at 69,668, https://www.govinfo.gov/content/pkg/FR-2021-12-08/pdf/2021-26477.pdf . It is the most recent iteration of a system created pursuant to a Congressional mandate that "[t]he [Secretary of Homeland Security][1], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor

---

[1] 8 U.S.C. § 1372 refers to the Attorney General, but those functions were transferred to DHS in the Homeland Security Act of 2002.

programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1).  SEVIS "is a web-based system" that DHS "uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." *See* "ICE, Student and Exchange Visitor Information System," found online at: https://www.ice.gov/sevis/overview (last visited Oct. 31, 2025).

In Section 1372, Congress described the system of records that should be used to maintain information about F, J, and M students. 8 U.S.C. § 1372. It is separate from the nonimmigrant statuses described in 8 U.S.C. § 1101(a)(15)(F), (M), and (J), nor does Section 1372 equate the records in the system to nonimmigrant status.  Similarly, Section 1372 does not state that the system of records is a method to adjudicate or terminate nonimmigrant status.  *See* 8 U.S.C. § 1372. Indeed, nonimmigrant status existed long before SEVIS.  Further, Congress mandated that ICE shall administer the program to collect information on nonimmigrant foreign students described in 8 U.S.C. § 1372 and "shall use" the information collected in SEVIS "to carry out the enforcement functions of the agency," 6 U.S.C. § 252(a)(4), but it does not say that the system of records is the enforcement mechanism.  *Id.*  SEVIS is a database of information.

Consistent with § 1372 and the nature of SEVIS as a database, in 2021, in accordance with the Privacy Act of 1974, DHS "modif[ied], rename[d] and reissue[d]" its database under § 1372 as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* 86 Fed. Reg. at 69,663.  That Federal Register System of Records Notice explained that "[t]he purpose of this system of records is to maintain the integrity of the U.S. immigration system by

collecting, maintaining, and analyzing information so that only bona fide nonimmigrant students or exchange visitors gain entry to the United States and that institutions accepting nonimmigrant students are legitimate and certified and adhere to the federal rules and regulations that govern them." *Id.* at 69,664. It further explained that DHS and the State Department use the system for various purposes, some of which relate to the students themselves and some of which are school-specific, including:

- "validat[ing] the identity of F/M/J nonimmigrants, federal government personnel, and school and program officials to ensure data integrity, accuracy, and proper data matching";

- "*facilitat[ing] and support[ing] determination activities* related to admissibility into the United States and the eligibility and status of benefits";

- "decid[ing] whether to certify a school or designate an EV Program so that F/M/J nonimmigrants may enroll or participate in the U.S.-based school or program";

- "*support vetting of F/M/J nonimmigrant*s and their dependents and school and program officials" through the use "supplemental information such as open-source media (*e.g.,* publicly available information in newspaper articles, school websites, government websites, social media sites and blogs, online forums)";

- "*monitor[ing] the compliance* of F/M/J nonimmigrants, schools, programs, and school and program officials with immigration laws and regulations";

- "*perform[ing] administrative and criminal investigations* related to the participation of F/M/J nonimmigrants, school and EV Program sponsors, and the schools and exchange visitor programs that enroll or seek to enroll individuals through the SEVP certification process, and to identify noncompliance with U.S. laws and regulations";

- "create[ing] and provid[ing] reports for analyzing compliance issues and identifying activities and related individuals (if needed) for evidence-based decision-making."

*Id.* at 69,664-665 (emphasis added).

Consistent with these many identified purposes of the SEVIS database and the information therein, SEVIS contains biographical information such as name and date of birth, identity information such as fingerprint information and passports, criminal history, education information,

employment information, financial support information, travel records, and case information such as "adjudication determinations; site visit reports; appeals determinations; administrative reviews; and information regarding investigations." *Id.* at 69,665-666. The information contained in SEVIS is obtained from "F/M/J nonimmigrants; proxy, parent, or legal guardians; school officials; program officials; federal and state government personnel; federal agency systems; governing bodies; and members of the public." *Id.* at 69,666.

### C. <u>The Privacy Act of 1974.</u>

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a (2018), establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. See Pub. L. 93–579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes). The Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. *See generally*, 5 U.S.C. § 552a. A system of records is defined by statute as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. 5 U.S.C. § 552a(a)(5).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. 5 U.S.C. § 552a(d)(1)-(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of §552a(g)(1)(A), which permit suit in district court to correct a record, and permits damages in certain instances if an individual is harmed by the government's incorrect records. *Id.* at (d)(3); (g)(1)(A)-(D).

In doing so, Congress also chose to limit the Privacy Act's provisions for access and redress to those who qualify as "a citizen of the United States or an alien lawfully admitted for permanent residence." *Id*. at 552a(a)(2).  In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants assume the Court's familiarity with Plaintiff's original and amended habeas petitions which were originally filed with this Court in the Spring of 2025 (Doc. Nos. 1, 12) so it only briefly recounts the factual background to this litigation.  Petitioner entered the United States pursuant to a student visa.   Doc. No. 12., ¶ 8.   On March 21, 2025, the Department of State revoked Plaintiff's visa effective immediately pursuant to its authority under 8 U.S.C. § 1201(i). Doc. No. 91-1 (State Department Memo for ICE).  Pursuant to 8 U.S.C. § 1226(a), ICE arrested Petitioner on March 25, 2025.  Doc. No. 19-1, ¶ 5.   With the revocation of her visa effective immediately, Petitioner was subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B).  Doc. No. 12-2 (Notice to Appear).

 The amended petition sought habeas relief principally by challenging the legality of Plaintiff's arrest and detention.  Doc. No. 12.  In addition to asking the Court to order Plaintiff's release, the Amended Petition also requested the Court "Restore Petitioner's SEVIS record."  This Court transferred the case to the District of Vermont on April 4, 2025.  Doc. No. 42.

On May 23, 2025, Plaintiff filed a motion for a preliminary injunction requiring the restoration of Plaintiff's SEVIS record.  Doc. No. 145.  On August 18, 2025, Judge Sessions III severed Plaintiff's claims relating to the termination of her SEVIS record from the habeas case and

transferred those claims to this Court.  Doc. No. 158.  On October 17, 2025, Plaintiff filed this

instant motion with the Court.  Doc. No. 172.  Plaintiff asks this Court to order ICE to reactivate

her SEVIS record and to restore it *nunc pro tunc* from the termination date to avoid any gaps in

the record.  *Id.* at 20.

## STANDARD OF REVIEW

Preliminary injunctive relief is an extraordinary remedy. *Maine Forest Prods. Council v.

Cormier*, 51 F.4th 1, 5 (1st Cir. 2022).  "A plaintiff seeking a preliminary injunction must establish

that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

public interest."  *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022)

(quoting *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008)).  At the threshold,

without subject matter jurisdiction, a party cannot demonstrate a likelihood of success on the merits

of their claim. *Compere v. Riordan*, 368 F. Supp. 3d 164, 171 (D. Mass. 2019).

## ARGUMENT

**I. Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits.**

    **A. This Court Lacks Jurisdiction to Review ICE's Termination of Plaintiff's SEVIS Record.**

        1. 8 U.S.C. § 1252(b)(9) bars review because the termination of Plaintiff's SEVIS record arises from removal actions.

Defendants submit that, because ICE's termination of Plaintiff's SEVIS record was an

action taken in contemplation of the fact that she was removable—and removal proceedings have

in fact commenced—the termination of Plaintiff's SEVIS record in these circumstances is outside

of the Court's jurisdiction under 8 U.S.C. § 1252.  The INA states that a petition for review

following removal proceedings "shall be the sole and exclusive means for judicial review of an

order of removal." 8 U.S.C. § 1252(a)(5).  Further, a "'zipper' clause" consolidates judicial review of all claims connected to removal proceedings and actions into the petition-for-review mechanism. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999).  This zipper clause says that "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

Lest there be any doubt, the statute reiterates: "no court shall have jurisdiction . . . by any . . . provision of law (statutory or nonstatutory), to review . . . such questions of law or fact." *Id.* The expansive language in the zipper clause has been given appropriately expansive scope by the courts.  The First Circuit noted that § 1252(b)(9)'s "expanse is breathtaking." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007).  And the Ninth Circuit construed it to cover "*any* issue—whether legal or factual—arising from *any* removal-related activity." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphases in original).

Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar*, 510 F.3d at 11.  Indeed, 8 U.S.C. § 1252(a)(2)(D) provides that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *See also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) ("jurisdiction to review such claims is vested exclusively in the courts of appeals").  The petition-for-review process, culminating in the courts of appeals, thus ensures a proper forum for claims arising from immigration proceedings and allows aggrieved persons to "receive their 'day in court.'" *J.E.F.M.*, 837 F.3d at 1031-32.

The termination of Plaintiff's SEVIS record presents questions "arising from [an] action taken . . . to remove" her and therefore falls within the zipper clause that channels review away from this Court to a petition for review.  8 U.S.C. § 1252(b)(9).  To be sure, not every termination of a SEVIS record indicates that the nonimmigrant is removable; indeed, the termination of a SEVIS record is not necessarily negative at all.  But in this case, it is clear from the circumstances surrounding ICE's termination of Plaintiff's SEVIS record that this termination arises from Plaintiff's removability and contemplated removal.  On March 21, 2025, the Department of State notified ICE that the DOS Bureau of Consular Affairs had revoked Plaintiff's nonimmigrant visa "effective immediately".  Doc. No. 91-1 (State Department Memo for ICE).  The Department of State may revoke visas in this manner "at any time, in [its] discretion." 8 U.S.C. § 1201(i).  This revocation of Plaintiff's visa rendered her "deportable" from the United States.  8 U.S.C. § 1227(a)(1)(B).  And it is precisely because such a visa revocation is a "basis for removability" that ICE "may terminate the nonimmigrant's SEVIS record based on the visa revocation" in these circumstances.  *See* April 26, 2025, Broadcast Message to All SEVP Personnel re SEVIS Notice – Policy Regarding Termination of Records, https://www.ice.gov/doclib/foia/policy/SEVISNotice_PolicyRegardingTerminationRecords.pdf (explaining that upon a visa revocation under 8 U.S.C. § 1201(i) that is "effective immediately" – as was Plaintiff's – "SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under [8 U.S.C. § 1227(a)(1)(B)]").

Further, and importantly, here the termination of Plaintiff's visa was concurrent with and part of ICE charging Plaintiff with removability due to the revocation of her visa.  Thus, Plaintiff's SEVIS record was terminated concurrent with efforts by ICE to initiate removal proceedings, and

antecedent to the actual initiation of removal proceedings.  It was therefore a "removal-related activity" that falls within the zipper clause.  *J.E.F.M.*, 837 F.3d at 1031.

It does not matter, however, that Plaintiff's SEVIS record was terminated before her removal proceedings began. "[N]othing in the statute limits its reach to claims arising from extant removal proceedings." *Aguilar*, 510 F.3d at 10.  The statute refers not only to questions about removal "proceedings" but also to questions about removal "actions." Thus, to exclude from the zipper clause actions that precede removal proceedings but nevertheless anticipate removal would "render the word 'action' superfluous and effectively excise it from the statute." *Aguilar*, 510 F.3d at 10.

To be sure, the words "arising from" in § 1252(b)(9) have been construed to exclude claims "with only a remote or attenuated connection to" removal.  *Aguilar*, 510 F.3d at 10.  But the zipper clause does not channel only questions arising from a removal "proceeding"; it also covers "any *action* taken . . . to remove an alien." 8 U.S.C. § 1252(b)(9) (emphasis added). This expansive language sweeps up "*any* removal-related activity," *J.E.F.M.*, 837 F.3d at 1031 (emphasis in original), including actions taken before removal proceedings commence. *Aguilar*, 510 F.3d at 10.

The fact that ICE policy connects the basis for the termination of Plaintiff's SEVIS record to a removable-rendering event (the revocation of a visa) added to the fact that the SEVIS termination here occurred concurrent with operational efforts to initiate removal proceedings and was followed by actual removal proceedings, demonstrates that in this instance the SEVIS termination was a part of—not remote to—actions to remove Plaintiff from the United States.

A challenge to the SEVIS termination – which flowed directly from the visa revocation and resulted in the initiation of removal proceedings – invites the Court to review that which Congress has said it should not review.  As Congress intended, Plaintiff can defend herself from

the charges of deportability by raising her claims during the administrative removal process and ultimately with the appropriate court of appeals through a petition for review. 8 U.S.C. §§ 1252(a)(2)(D), (a)(5), and (b)(9). This Court, however, lacks jurisdiction to hear them. Plaintiff is therefore unlikely to succeed on the merits and her motion for injunctive relief should be denied.

      2. Judicial review under the APA is prohibited as ICE's termination of Plaintiff's SEVIS record is not a final agency action.

A final agency action is required for APA review. 5 U.S.C. § 706. An action is "final" when it (1) "mark[s] the consummation of the agency's decision-making process," and (2) is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). Not all agency actions are final agency actions, and when an action is "a step along the way to removal but not itself a final order," it is not reviewable under the APA. *Dubey v. Dep't of Homeland Security*, 154 F.4th 534, 537 (7th Cir. 2025) (noting asylum determination is not a final action subject to challenge in district court); *see also A.Z. v. Nielson*, No. 18-10511-PBS, 2018 WL 5269990, at *4 (D. Mass. Oct. 23, 2018) (collecting cases).

In *Dubey*, plaintiffs alleged that DHS made a determination that they engaged in fraud during their optional practical training. *Id.* at 536. The Seventh Circuit found that any such determination was not itself a final agency action and that "[t]hose decisions did not themselves revoke plaintiffs' visas" but were instead merely "inputs into the revocations" and not final actions under the APA. *Id.* at 537. So too here: the agency's termination of the SEVIS record is one step in the process, not a final agency action, and plaintiff cannot circumvent removal proceedings with an APA claim. *See id.*

      3. The Privacy Act bars Plaintiff's request to adjust her SEVIS record.

It is well established that "absent a clear and unequivocal waiver of sovereign immunity," the "United States and its agencies are generally immune from suit in federal court." *Crowley*

*Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022).  Although the APA provides a limited waiver of the government's sovereign immunity for suits challenging final agency action and "seeking relief other than money damages," it does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. That carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

The Privacy Act, codified at 5 U.S.C. § 552a, limits Plaintiff's ability to seek the relief she requests.  The Act establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records.  *See* Pub. L. 93-579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes)). The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. 5 U.S.C. § 552a.

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records.  *Id*. § 552a(d)(1)–(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of § 552a(g)(1)(A).  *Id*. § 552a(d)(3).  The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record.  *Id*. § 552a(g)(1).  In an action to correct a record, the court can order the agency to make the correction and can assess costs and fees against the United States if the complainant substantially prevails.  *Id*. § 552a(g)(2). Actions may also be

brought to compel access to a record or for damages in certain instances. *Id*. §§ 552a(g)(1)(B), (g)(1)(C), (g)(1)(D).

The Privacy Act limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2).  In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. Turkey, where Plaintiff is from, has not been designated.  *See* 82 Fed. Reg. 7860–61 (Jan. 23, 2017); 84 Fed. Reg. 3493–94 (Feb. 12, 2019).

Though the APA generally waives the government's immunity, § 702 "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought.'" *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011) (quoting 5 U.S.C. § 702) (citing *Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (concluding the government's immunity remains intact when "another statute expressly or implicitly forecloses injunctive [or declaratory] relief")); *see Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 215 ("[Section 702] prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."). "'[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)); *see Block*, 461 U.S. at 287 ("A necessary corollary of this rule [that the United States cannot be sued without the consent of Congress] is that when Congress

attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.").

The Privacy Act provides a specific remedy. 5 U.S.C. § 552a(g)(1)(C) states,

> Whenever an agency . . . fails to maintain any record concerning any individual with such accuracy . . . as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C).

Plaintiff's claims seek relief provided by the Privacy Act: the amendment of her SEVIS record.  ICE maintains SEVIS records in *DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records*. 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States."). The Privacy Act, however, precludes review of Plaintiff's attempt to amend her SEVIS record because Plaintiff is a foreign national.

Plaintiff makes no claim, nor can she, that she is either a U.S. citizen or a lawful permanent resident.  As such, the Privacy Act precludes judicial review of Plaintiff's claims. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act.").

### B.  ICE had a Rational Reason to Terminate Plaintiff's SEVIS record.

16

Even if ICE's termination of Plaintiff's SEVIS record were reviewable, the Court should not enjoin it because ICE had a rational reason for its action.  SEVIS is used in part to "maintain information on . . . F-1 and M-1 students who come to the United States." ICE, *SEVIS Program*, https://perma.cc/93RQ-WVLJ.    Here, ICE terminated Plaintiff's SEVIS record as the visa had been revoked effective immediately.  Such termination reflected that Plaintiff was no longer lawfully present in the United States on a nonimmigrant student visa and that she was subject to removal proceedings. 8 U.S.C. § 1227(a)(1)(B).  That information was accurate, and Plaintiff does not dispute it.  That undisputed fact also distinguishes this case from the majority, if not all, of the SEVIS-related cases Plaintiff cites that involved prudential visa revocations that did not render such individuals subject to removal proceedings.

Plaintiff conflates the agency's action here—the termination of her SEVIS record—with the termination of her F-1 status, which has not occurred.  A nonimmigrant student's "status" and "visa" are distinct.  ICE did not, and has not terminated Plaintiff's nonimmigrant status, which is reflected by the fact that the NTA does not charge removability under 8 U.S.C. § 1227(a)(1)(C) (failure to maintain status).  Rather, the NTA charges removability under Section 1227(a)(1)(B) based on the State Department's immediate revocation of her nonimmigrant visa.

Because ICE did not terminate Plaintiff's F-1 status with the termination of her SEVIS record, Plaintiff incorrectly focuses on whether the termination of her SEVIS record was in "accordance with law because there were no permitted regulatory reasons for terminating her SEVIS record."  Doc. No. 172 at 10.  Plaintiff then discusses the regulatory basis "in which ICE may terminate an F-1 visa holder's status—the revocation of a waiver, the introduction of a private bill, or pursuant to a Federal Registration notification—[which] are not present here." *Id.*  Plaintiff asserts that "the only other permissible basis under the regulations for the termination of [her]

17

SEVIS record would be failure to maintain a course of study or otherwise fail[ing] to maintain her status." *Id.* at 11.  Defendants agree with Plaintiff that these scenarios in which ICE may terminate a F-1 visa holder's status are not present in this case, but Defendants disagree that a SEVIS record cannot be terminated absent these regulatory reasons.

First, SEVIS is a law enforcement database that contains records about foreign nationals, schools, designated school officials, and others involved in the student nonimmigrant programs. 86 Fed. Reg. at 69,668.  It is a *tool* used by DHS and Department of State to support other functions, and those functions were explained publicly in the Federal Register on December 8, 2021, over three years before the actions that led to this litigation. *See id.; see also* https://studyinthestates.dhs.gov/schools/report/maintaining-accurate-sevis-records.  That Notice describes SEVIS's use as "validat[ing] the identity of F/M/J nonimmigrants"; "*facilitat[ing] and support[ing] determination activities* related to admissibility into the United States and the eligibility and status of benefits"; "*support vetting of F/M/J nonimmigrant*s and their dependents and school and program officials"; "*monitor[ing] the compliance*" with immigration laws and regulations; *"perform[ing] administrative and criminal investigations* related to the participation of F/M/J nonimmigrants, school and EV Program sponsors, and the schools and exchange visitor programs"; "create[ing] and provid[ing] reports for analyzing compliance issues and identifying activities and related individuals (if needed) for evidence-based decision-making."  86 Fed. Reg.at 69,664-665.  Nothing in the Notice suggests that SEVIS is a method by which ICE can adjudicate F-1 student status or that the only reasons for terminating a SEVIS record are the same as the reasons for terminating F-1 student status.

In fact, the evidence shows that the SEVIS record and F-1 student status are *not* inextricably linked: setting the SEVIS record to terminated does not terminate F-1 student status, nor is a SEVIS

record terminated only when F-1 student status is terminated.  By way of example, a *school* can terminate a SEVIS record, *see* [https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student](https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student), but there is no allegation that in doing so the *school* terminates a student's *nonimmigrant status*, nor is there any evidence that the government has delegated the authority to terminate nonimmigrant status to schools.  Indeed, ICE notes that "termination is not always negative.  DSOs can terminate records for several normal, administrative reasons." *Id.*  Similarly, if a school mistakenly terminates a SEVIS record, it can have that record reactivated by ICE, but there is no indication that the mistaken termination affects the student's nonimmigrant status or that such status must be remedied after a mistaken termination. *See* [https://studyinthestates.dhs.gov/sevis-help-hub/student-records/corrections-and-correction-requests/correction-requests/correct-1](https://studyinthestates.dhs.gov/sevis-help-hub/student-records/corrections-and-correction-requests/correction-requests/correct-1).  The fact that a school can terminate a SEVIS record without terminating a student's *nonimmigrant status* shows that SEVIS record and status are not inextricably linked.  DHS's website also explains that the I-20 is a student's proof of status, not the SEVIS record.  *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 ("Your Form I-20 proves that you are legally enrolled in a program of study in the United States. … If you are eligible to apply for a driver's license or a social security number, remember to bring your Form I-20 with you."). Students do not even have access to their SEVIS records because SEVIS is a government law enforcement database; SEVIS records are not owned or controlled by the students.

For these reasons, ICE's termination of Plaintiff's SEVIS record was not unlawful under the APA or the Constitution as a violation of the First Amendment.

## II.    The Balance of Harms and Public Interest Weigh against Relief.

The party seeking a preliminary injunction must show that the balance of equities tips in their favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. A court "'should pay particular regard for the public consequences'" of injunctive relief. *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, the public interest weighs in favor of denying the motion. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992); *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases have long recognized the power to . . . exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."). Thus, the balance of the equities weighs in favor of the government.

## III.    The Court should Require Plaintiff to Post a Bond.

Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Global NAPs, Inc. v. Verizon New England, Inc.,* 489 F.3d 13, 20-21 (1st Cir. 2007). A bond posted for a preliminary injunction is viewed as a contract in which "the court and plaintiff 'agree' to the bond amount as the 'price' of a wrongful injunction." *Global NAPs, Inc.*, 489 F.3d at 21 n. 5 (internal citation omitted).

## CONCLUSION

As explained above, the motion for a preliminary injunction should be denied and the Court should dismiss Plaintiff's SEVIS termination claim.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:     /s/ Mark Sauter
Mark Sauter
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3347
Dated: November 4, 2025          Email: Mark.Sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: November 4, 2025          By:     /s/ Mark Sauter
Mark Sauter
Assistant United States Attorney