IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RÜMEYSA ÖZTÜRK,
*Plaintiff,*

v.

PATRICIA HYDE, et al.,
*Defendants.*

No. 1:25-cv-12334-DJC

**Plaintiff's Reply in Support of Preliminary Injunctive Relief**

**Introduction**

In its submission, the government agrees it had no basis to terminate Rümeysa Öztürk's F-1 student status and states that it did not terminate that status. But it argues that it was nonetheless rational to terminate Ms. Öztürk's SEVIS *record* and thereby make her unable to accept employment consistent with her F-1 status. For the reasons explained below, the SEVIS termination is reviewable, and Ms. Öztürk is likely to succeed on the merits of her claims. She is entitled to preliminary injunctive relief.

**Argument**

**I.     The termination of Ms. Öztürk's SEVIS record is reviewable.**

The government raises three arguments regarding this Court's ability to reach the merits—in each instance asking this Court to be the first ever to hold that a district court cannot determine the legality of a SEVIS termination. Each argument is without merit.

**A.     Review is not barred by 8 U.S.C. § 1252(b)(9).**

The government first contends Plaintiff's claims are barred by 8 U.S.C. § 1252(b)(9) because the termination of her SEVIS record occurred "in contemplation"

of removal proceedings. ECF No. 179.[1] Section 1252(b)(9) channels review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove [a noncitizen] from the United States," into the process for seeking judicial review of a final order of removal. It does not apply because the termination of Ms. Öztürk's SEVIS record is collateral to her removal proceedings and cannot be reviewed in a petition for review ("PFR"). *See Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).

The First Circuit has explained that § 1252(b)(9) is a "channeling provision, not a claim-barring one." 510 F.3d at 11; ECF No. 179 at 10. The provision is "applicable" only where the relevant questions "can be raised in removal proceedings and eventually brought to the court of appeals for judicial review" through a PFR. *Aguilar*, 510 F.3d at 11; *see also* 8 U.S.C. § 1252(a)(5). By contrast, "certain claims, by reason of the nature of the right asserted, cannot be raised efficaciously within" a PFR. 510 F.3d at 11. Such claims are "independent" or "collateral" to the removal process and their review is not barred by § 1252(b)(9). *See id.*; *see also Gicharu v. Carr,* 983 F.3d 13, 16 (1st Cir. 2020) (noting *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality op.) "reject[ed] an interpretation . . . that would make certain claims 'effectively unreviewable'").[2]

Ms. Öztürk's SEVIS termination claims are collateral to the removal process and cannot be reviewed in a PFR. While claiming that § 1252(b)(9) applies, the government does not point to any mechanism or statute that would enable the legality of

---

[1] The government's assertions that the SEVIS termination was "in contemplation of" removal proceedings, "part of" removal actions, and due to the revocation of her visa, ECF No. 179 at 2, 9, 11-2, 17, are not accompanied by any sworn declaration.
[2] The First Circuit explained that the words "'arise from'" in § 1252(b)(9) may not be construed to be "infinitely elastic." *Aguilar*, 510 F.3d at 10. Section 1252(b)(9), therefore, "cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove [a noncitizen]." *Id.*

revoking Ms. Öztürk's SEVIS record to be considered in removal proceedings or in a subsequent PFR. Nor could it. The PFR operates as an exception to the general rule that the district courts have original jurisdiction of civil actions raising federal questions. *See* 28 U.S.C. § 1331; *see also id.* § 1291. With exceptions not relevant here, Congress provided that judicial review of removal orders "is governed only by" 28 U.S.C. § 2341, *et seq.* (the "Hobbs Act"), which in turn provides procedures for judicial review in the Courts of Appeals. *See* 8 U.S.C. § 1252(a)(1); *see also id.* § 1252(b)(4)(A) (requiring review "only on the administrative record on which the order of removal is based"). But neither § 1252, the Hobbs Act, nor any other provision authorizes judicial review of SEVIS terminations in a PFR.

Consequently, if the government were correct that § 1252(b)(9) channels review of Ms. Öztürk's SEVIS claims to the immigration court (and ultimately to the Court of Appeals on a PFR), the practical effect would be to deprive her of any remedy at all. This result is precisely what *Aguilar* and *Jennings* reject. *See Ahmed v. Noem*, 2025 WL 2299447, at *14 (D.D.C. Aug. 8, 2025); *see also Ozturk v. Trump*, 2025 WL 2391505, at *8 (D. Vt. Aug. 18, 2025) (finding it unlikely that § 1252(b)(9) bars Ms. Öztürk's SEVIS claims and transferring those claims).

  **B.**  **The SEVIS record termination is a final agency action.**

The SEVIS termination here is a final agency action because it (1) "mark[s] the consummation of the agency's decision-making process"; and (2) is an "action . . . by which rights or obligations have been determined, or from which legal consequences will flow." *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024) (quotations omitted).

3

Courts in other SEVIS cases agree. *See Doe #1 v. Trump*, 785 F. Supp. 3d 575, 584 (D. Ariz. 2025).[3]

While the government does not dispute that terminating Ms. Öztürk's SEVIS had legal consequences such as preventing her from accepting employment, *see Doe #1*, 785 F. Supp. 3d at 584, it argues that the SEVIS termination was merely a "step in the process, not a final agency action." ECF No. 179 at 13. For starters, the government does not say what *process* the SEVIS termination is a step toward. To the extent it refers to Ms. Öztürk's removal procedures, the stated basis for those procedures is the revocation of her student visa, and Ms. Öztürk's SEVIS record termination is not a basis for nor any part of those proceedings. *Id.* at 8; ECF No. 12-2; *see also* 8 U.S.C. § 1201(i).[4] Nor does the government suggest that the termination decision is undergoing any further review. The termination of Ms. Öztürk's SEVIS record is not a "step" on the way to removal, but a final action.

C.   **Review is not barred by the Privacy Act.**

The government's final argument regarding reviewability of the APA claim—that the Privacy Act bars review—has also been repeatedly rejected.[5] The government cites

---

[3] *See also, e.g.*, *Ajugwe v. Noem*, No. 8:25-cv-982, 2025 WL 1370212, at *8 (M.D. Fla. May 12, 2025); *Vyas v. Noem*, No. 3:25-0261, 2025 WL 1351537, at *6-8 (S.D.W.V. May 8, 2025); *Parra Rodriguez v. Noem*, No. 3:25-cv-616, 2025 WL 1284722, at *7 (D. Conn. May 1, 2025).
[4] Elsewhere in its brief, the government suggests that it decided to terminate the SEVIS record as a *result* of the decision to initiate removal proceedings. *See* ECF No. 179 at 2, 9, 17. Even if that were what occurred, it would merely reflect the choice to attach a *final* consequence in forum A (SEVIS) to the initiation of a separate proceeding in forum B (immigration court).
[5] *See, e.g.*, *Doe #1*, 785 F. Supp. 3d at 584-85 (D. Ariz. 2025); *Doe v. Noem*, 781 F. Supp. 3d 1055, 1065-66 (E.D. Ca. 2025); *Ajugwe*, 2025 WL 1370212, at *8; *Vyas*, 2025 WL 1351537, at *8; *Parra Rodriguez*, 2025 WL 1284722, at *6; *see also Doe #1 v. Noem*, 781 F. Supp. 3d 246, 264-65 (D.N.J. 2025) (collecting SEVIS termination challenges rejecting government's Privacy Act argument).

5 U.S.C. § 702, which provides that the APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." It contends the Privacy Act impliedly forbids the relief sought here because the Act has provisions for seeking amendment to agency records and filing suit when certain consequences result from an agency's "fail[ure] to maintain any record concerning any individual with . . . accuracy." 5 U.S.C. § 552a(g)(1)(C); ECF No. 179 at 16. Because generally only U.S. citizens and lawful permanent residents are "covered individuals" under the Privacy Act, *see* 5 U.S.C. § 552a(a), the government contends the Act impliedly forbids relief here. ECF No. 179 at 16.

But Ms. Öztürk is not seeking a remedy provided by the Privacy Act because she is not seeking to "review [her] SEVIS records or to challenge the accuracy, relevance, timeliness or completeness of those records," under the Privacy Act. *Doe #1 v. Noem*, No. 25-CV-317-WMC, 2025 WL 1555382, at *9 (W.D. Wis. June 2, 2025). Rather than seeking to "correct" a record-keeping error regarding an otherwise lawful agency action, Ms. Özturk challenges ICE's very *decision* to terminate her record in the first place, which causes her to lose opportunity for employment and suffer disruption of her academic life. *Doe #1 v. Trump*, No. 25 C 4188, 2025 WL 1341711, at *8 (N.D. Ill. May 8, 2025); *see Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) (noting Privacy Act allows "correct[ing]" "inaccurate information").

Moreover, far from impliedly barring Ms. Öztürk from obtaining the remedy she seeks, the Privacy Act does not apply to her at all because she is not a "covered individual" as defined by 5 U.S.C. § 552a(a). *See, e.g.*, *Liu v. Noem*, 780 F. Supp. 3d 386, 400-01 (D.N.H. 2025); *see also Kirtz*, 601 U.S. at 63-64. The Privacy Act is generally designed to provide certain rights to U.S. citizens and lawful permanent residents. *See*

5

5 U.S.C. § 552a(a). Nothing in the Privacy Act suggests any intent to regulate the noncitizens' interactions with the Department of Homeland Security ("DHS"), or to impact the availability of APA remedies available to noncitizens. Indeed, DHS's own decision to allow noncitizens access to Freedom of Information Act procedures at the same time that it was formally exempting SEVIS from the Privacy Act severely undercuts the government's claim that the Privacy Act's remedies were intended to be exclusive.[6] Relief is therefore not barred by § 702 and the Privacy Act.

## II.     Ms. Öztürk is likely to prevail on the merits of her claims and is entitled to preliminary injunctive relief.

Ms. Öztürk has demonstrated a likelihood of success on the merits. She is entitled to preliminary injunctive relief reactivating her SEVIS record.

### A.     The government does not meaningfully dispute there was unlawful First Amendment retaliation.

Although its brief states in passing that the termination of Ms. Öztürk's SEVIS record was "not unlawful . . . as a violation of the First Amendment," the government does not dispute either of the elements of Ms. Öztürk's First Amendment claim. ECF No. 179 at 19. It does not contest that Ms. Öztürk's speech was protected, nor dispute the

---

[6] 86 FR 69663-01, 69664, 69668 (Dec. 8, 2021) (stating DHS was "exempting" SEVIS from certain provisions of the Act on the grounds that it is a "law enforcement system of records," but noting alternative procedures for requesting and contesting records). As one court has noted, the Supreme Court's decision in *Kirtz* also "suggests that the Privacy Act is not the kind of comprehensive and 'exclusive' remedial statute that impliedly displaces related remedies under other statutes." *All. for Retired Americans v. Bessent*, 770 F. Supp. 3d 79, 105–06 (D.D.C. 2025) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012)). That Court thus concluded that "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." *Id.* (citing *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216).

6

"clear causal connection between Ms. Öztürk's speech and its retaliatory conduct." *See* ECF No. 172 at 13-14. Nor does it articulate any contention that *SEVIS termination* was not one of those retaliatory actions.

The government makes only the vague and unsupported contention, elsewhere in its brief, that it is "clear from the circumstances surrounding ICE's termination of Plaintiff's SEVIS record that this termination arises from Plaintiff's removability and contemplated removal." ECF No. 179 at 11. That contention is belied by notice the government issued when it terminated Ms. Öztürk's SEVIS record, which does not refer to the revocation of her visa or her removal proceedings. ECF No. 175-5. Instead, one of the provisions it cites is 8 U.S.C. § 1227(a)(4)(C)(i)—the foreign policy ground of deportability that the government has repeatedly invoked against students who advocated in support of Palestinians, *because* of their advocacy. *See id.*; *see also Am. Assoc. of Univ. Professors v. Rubio*, --- F. Supp. 3d ----, 2025 WL 2777659, at *3-5, 10-14, 19-23, 25-26 (D. Mass. Sept. 30, 2025). That record provides further support for Ms. Öztürk's likelihood of success on her First Amendment claim.

### B.     The government's brief also fails to undermine Ms. Öztürk's APA claim.

The government's brief also confirms that Plaintiff has a likelihood of success on her APA claim. The government concedes that Ms. Öztürk maintained status and that it had no permissible basis to terminate that status. ECF No. 179 at 17. In fact, the government asserts that it did *not* terminate her F-1 status, and it would presumably agree that she remains in valid F-1 status to this day. *See id.* (affirming termination of Ms. Öztürk's F-1 status "has not occurred").

7

Highlighting the difference between a SEVIS *record* and F-1 *status*, the government seems to argue that because regulations only govern termination of *status*, and it did not terminate F-1 status, nothing restricts what it may do with a SEVIS *record*. The government further argues it was "rational" to terminate Ms. Öztürk's SEVIS record in light of its plan to initiate removal proceedings based on the revocation of her visa, confusingly asserting that the "termination reflected that Plaintiff was no longer lawfully present in the United States on a nonimmigrant student visa and . . . was subject to removal proceedings." *Id.* at 2, 17.

These arguments only bolster Plaintiff's claim that the termination of her SEVIS record was both contrary to law and arbitrary and capricious. With regard to 'contrary to law,' the government's interpretation of applicable laws to permit it to terminate the SEVIS record of a student who is in valid F-1 status is implausible. Congress *mandated* the government maintain a database of F-1 students that includes information such as "current address," whether they are "maintaining status as a full-time student," and "any disciplinary action" against the student, 8 U.S.C. § 1372(a)(1) & (c); *see also* 8 C.F.R. § 214.3(g)—updates Ms. Öztürk's university is unable to provide, ECF No. 175 ¶ 12, even though she is presumably in valid F-1 status. No rational interpretation of DHS's obligations to maintain the SEVIS could support this view.

With regard to arbitrary and capriciousness, the government's argument ignores the fact that what it characterizes as ICE's tinkering with its own internal database has harmful legal consequences. The government does not dispute that by terminating Ms. Öztürk's SEVIS record, it is preventing her from accepting on-campus work that her F-1 status otherwise permits, and that a terminated SEVIS record could cause her to suffer future adverse immigration consequences. *See* ECF No. 172 at 15-17; ECF No. 176 ¶¶ 19-

8

20. The government has articulated no rational reason for cutting off Ms. Öztürk's ability to work and harming her future immigration prospects when her student status has not been terminated and presumably remains valid. ECF No. 179 at 17.

Additional factors further undercut any claim to rationality. First, by failing to dispute that DHS retaliated against Ms. Öztürk because of her speech, the government severely encumbers any claim to rational decision making. Second, the government's embrace of SEVIS as a "tool" only highlights the irrationality of not allowing it to be updated to reflect Ms. Öztürk's address and other required information. See ECF No. 175 ¶ 12. Third, the government's current explanation for Ms. Öztürk's SEVIS termination is contradicted by its own brief and the record. While the government argues that "termination reflected that Plaintiff was no longer lawfully present," it has acknowledged that Ms. Öztürk's F-1 *status* has not been terminated, ECF No. 179 at 17,[7] and the termination notice actually issued nowhere reflects that current explanation.[8] Fourth, the continually shifting rationales provided by the government—both in the SEVIS and in this litigation—further undermine its claim of rational decision-making. *See* ECF No. 175 ¶¶ 6-11; ECF No. 148 (contending SEVIS termination was a "reasonable" way to "share" information with Ms. Öztürk's university about her visa

---

[7] The mere initiation of removal proceedings against Ms. Öztürk does not render her unlawfully present. *See* 8 C.F.R. § 239.3; *see also* U.S. Citizenship and Immigration Services, *USCIS Policy Manual*, www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-external.pdf (Chapter 40.9.2(b)(1)(E)(ii)).

[8] The notice (ECF No. 175-5) cites (1) 8 U.S.C. § 1227(a)(1)(C)(i), which applies to those who fail to maintain status, which the government concedes Ms. Öztürk did not do, ECF No. 179 at 17; and (2) 8 U.S.C. § 1227(a)(4)(C)(1), the foreign policy ground, which the Department of State did not invoke against Ms. Öztürk due to the lack of evidence that she had "engaged in any antisemitic activity" or made statements supporting terrorism. *AAUP*, 2025 WL 2777659, at *26-27 (quoting internal memorandum).

revocation and removal proceedings). Ms. Öztürk is likely to prevail on the merits of her APA claim.

### C.     The balance of the equities tips decisively in favor of relief.

Ms. Öztürk has articulated specific irreparable harms from the termination of her SEVIS record and demonstrated how the public interest weighs in favor of relief, not only because of the contributions that she is prevented from making, but also because of the chilling effect of the government's actions. ECF No. 172 at 15-19; ECF No. 173 ¶¶ 3-12; *see also AAUP*, 2025 WL 2777659, at *25-34, 48. The government has not contested any of these harms and its brief reference to a generalized public interest in "control over immigration" only underscores that an injunction would pose no inconvenience or harm to it whatsoever. *See* ECF No. 179 at 20 (quotations omitted). The balance of the equities accordingly tips heavily in Ms. Öztürk's favor.

### D.     This Court should not require a preliminary injunction bond.

The government's request for payment of a security bond should not be granted. *See* ECF 179 at 20. A bond is "proper" only to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. Pro. 65(c). The government has identified no costs that it would incur from having to comply with the requested preliminary injunction, and bond is not proper. *See California v. Trump*, 786 F. Supp. 3d 359, 395 (D. Mass. 2025); *Parra Rodriguez*, 2025 WL 1284722, at *12.

### Conclusion

This Court should grant Plaintiff's requested preliminary injunctive relief. To the extent the Court construes the government's submission as a motion to dismiss, *see* ECF No. 179 at 20, it should deny that motion.

Dated: November 6, 2025                                  Respectfully submitted,

/s/Adriana Lafaille
Jessie J. Rossman (BBO #670685)
Adriana Lafaille (BBO #680210)
Rachel E. Davidson (BBO #707084)
Julian Bava (BBO #712829)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
rdavidson@aclum.org
jbava@aclum.org

Mahsa Khanbabai (BBO #639803)
115 Main Street, Suite 1B
North Easton, MA 02356
(508) 297-2065
mahsa@mk-immigration.com

Brian Hauss
Esha Bhandari
Brett Max Kaufman
Michael K. T. Tan
Noor Zafar
Sidra Mahfooz
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
bhauss@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org
m.tan@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Matthew D. Brinckerhoff
Katherine Rosenfeld
Vasudha Talla
Sonya Levitova
EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
One Rockefeller Plaza, 8th Floor
New York, NY 10020
212-763-5000
mbrinckerhoff@ecbawm.com
krosenfeld@ecbawm.com
vtalla@ecbawm.com
slevitova@ecbawm.com

Ramzi Kassem
Naz Ahmad
Mudassar Toppa
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu

Lia N. Ernst
Monica H. Allard
Hillary Rich
ACLU Foundation of Vermont
P.O. Box 277
Montpelier, VT 05601
802-223-6304
lernst@acluvt.org
mallard@acluvt.org
hrich@acluvt.org